**UNITED STATES ex rel. SIERRA LAND & WATER CO. v. ICKES, Secretary of the Interior.**

**No. 6445.**

United States Court of Appeals for the District of Columbia.

Decided April 13, 1936.

F. W. Clements, of Washington, D. C., for appellant.

Frederic L. Kirgis, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

VAN ORSDEL, Associate Justice.

On November 30, 1923, the Sierra Land & Water Company, a California corporation, filed in the local land office at Independence, Cal., four applications for rights of way over the public domain. The applications were made under the Act of Congress of March 3, 1891, 26 Stat. 1095, and section 2 of the Act of May 11, 1898, 30 Stat. 404, as amended (43 U.S.C.A. § 951), which provide for the granting of rights of way for canals and reservoirs to carry and store water for irrigation. In each application Rush creek was stated as the source of water supply, and the applications were based upon an appropriation of 75,000 miner's inches of water from Rush creek, in accordance with the laws of the state of California.

In 1923 the Commissioner of the General Land Office rejected the four applications, on the ground that there was no evidence to establish the existence of the water right claimed, or of the possibility of plaintiff company's securing water for the carrying out of the irrigation project. The action of the commissioner was based on the statutes and regulations of the Department of the Interior.

Appeal was taken from the decision of the Commissioner to the Secretary of the Interior, and the secretary was requested by plaintiff company to suspend action on the appeal, pending an adjudication in the

courts of California between the city of Los Angeles and others as to the right to the use of the waters of Rush creek. It was claimed that if plaintiff's rights were established to the waters involved in that litigation, it would furnish a basis for an approval by the secretary of the rights of way for the construction of the irrigation works.

On September 27, 1933, a final decision in the California litigation was reached by the Supreme Court of that state, which decision was adverse to the claims of plaintiff company, holding that it possessed no enforceable right to the water claimed by it. Sierra Land & Water Company v. Cain Irrigation Company, 219 Cal. 82, 25 P.(2d) 223.

After notice of the decision of the Supreme Court of California, the appeal was taken up for consideration by the Secretary of the Interior. The secretary affirmed the commissioner's decision, on the ground that plaintiff company had been held by the courts to have no right to the use of the waters relied upon by it, and essential to the operation of the proposed irrigation system.

Thereafter plaintiff raised the question as to the authority of the secretary to require evidence of a water right, or the sufficiency of the source of supply, as a condition precedent to the approval of plaintiff's applications for ditch and reservoir rights of way. This contention was made in a petition by plaintiff for the exercise of supervisory authority by the secretary, which amounted to a petition for rehearing of the matters presented by the appeal. Upon the refusal of the secretary to re-open the case, the present suit was instituted, alleging the invalidity of these requirements by the secretary, and seeking a writ of mandamus to compel the secretary to approve its several applications for rights of way, notwithstanding the failure of the company to furnish evidence of its right or ability to obtain water for carrying out its project.

The Act of Congress of March 3, 1891, 26 Stat. 1095, comprehended a broad policy for the irrigation of the arid public lands of the West. It provided for the irrigation of lands embraced within the timber culture acts and the acquiring of land by settlers under the Desert Land Act. Section 2 (43 U.S.C.A. § 327), amending the Act of March 3, 1877, provided in part as follows: "Sec. 4. At the time of filing the declaration hereinbefore in this chapter required the party shall also file a map of said land, which shall exhibit a plan showing the mode of contemplated irrigation, and which plan shall be sufficient to thoroughly irrigate and reclaim said land, and prepare it to raise ordinary agricultural crops, and shall also show the source of the water to be used for irrigation and reclamation. Persons entering or proposing to enter separate sections, or fractional parts of sections, of desert lands, may associate together in the construction of canals and ditches for irrigating and reclaiming all of said tracts, and may file a joint map or maps showing their plan of internal improvements."

Section 18 of the Act (see 43 U.S.C.A. § 946 and note) provides: "That the right of way through the public lands and reservations of the United States is hereby granted to any canal or ditch company formed for the purpose of irrigation and duly organized under the laws of any State or Territory, which shall have filed, or may hereafter file, with the Secretary of the Interior a copy of its articles of incorporation, and due proofs of its organization under the same, to the extent of the ground occupied by the water of the reservoir and of the canal and its laterals, and fifty feet on each side of the marginal limits thereof; also the right to take, from the public lands adjacent to the lines of the canal or ditch, material, earth, and stone necessary for the construction of such canal or ditch: Provided, That no such right of way shall be so located as to interfere with the proper occupation by the Government of any such reservation, and all maps of location shall be subject to the approval of the Department of the Government having jurisdiction of such reservation, and the privilege herein granted shall not be construed to interfere with the control of water for irrigation and other purposes under authority of the respective States or Territories."

By the Act of May 11, 1898, 30 Stat. 404 (43 U.S.C.A. § 951), it was further provided that the rights of way "may be used for purposes of a public nature; and said rights of way may be used for purposes of water transportation, for domestic purposes, or for the development of power, as subsidiary to the main purpose of irrigation."

Section 19 of the Act of March 3, 1891 (43 U.S.C.A. § 947), provides: "Any canal or ditch company desiring to secure the benefits of this act [sections 946 to 949, inclusive], shall, within twelve months after the location of ten miles of its canal, if the same be upon surveyed lands, and if upon unsurveyed lands, within twelve months after the survey thereof by the United States, file with the register of the land office for the district where such land is located a map of its canal or ditch and reservoir; and upon the approval thereof by the Secretary of the Interior the same shall be noted upon the plats in said office, and thereafter all such lands over which such rights of way shall pass shall be disposed of subject to such right of way. Whenever any person or corporation, in the construction of any canal, ditch, or reservoir, injures or damages the possession of any settler on the public domain, the party committing such injury or damage shall be liable to the party injured for such injury or damage."

Sections 18 and 19 must be construed together, as section 18 does not confer a right independently of section 19, and section 20 of the act (43 U.S.C.A. § 948) extends its provisions to apply to "all canals, ditches, or reservoirs, heretofore or hereafter constructed, whether constructed by corporations, individuals, or associations of individuals, on the filing of the certificates and maps therein provided for."

In the exercise of the broad jurisdiction conferred upon the Secretary of the Interior in respect of the disposition of the public lands of the United States, he has promulgated from time to time regulations, among which are the following:

"While these acts grant rights of way over the public lands necessary to the maintenance and use of ditches, canals, and reservoirs, the control of the flow and use of the water is, so far as this act is concerned, vested in the States or Territories, the jurisdiction of the Department of the Interior being limited to the approval of maps carrying the right of way over the public lands. If the right of way applied for under this act in any wise involves the appropriation of natural sources of water supply, the damming of rivers, or the use of lakes, the maps should be accompanied by proof that the plans and purposes of the projectors have been regularly submitted and approved in accord-ance with the local laws or customs governing the use of water in the State or Territory in which such right of way is located. No general rule can be adopted in regard to this matter. Each case must rest upon the showing filed." (Par. 3, Regulations for Rights of Way over Public Lands and Reservations, approved June 6, 1908, 36 L.D. 568).

"An incorporated company desiring to obtain the benefits of the law must file the papers and maps specified below with the register of the land district in which the canal, ditch, or reservoir is to be located. These papers and maps will be forwarded to the General Land Office, and, after examination, they will be submitted to the Secretary of the Interior with recommendation as to their approval: * * *

"(g) A copy of the company's title or right to appropriate the water needed for its canals, ditches, and reservoirs, certified as required by the State or Territorial laws. If the miner's inch is the unit used in such title, its equivalent in cubic feet per second must be stated. If the right to appropriate the water has not been adjudicated under the local laws, a certified copy of the notice of appropriation will be sufficient. If the notice of appropriation is accompanied by a map of the canal or reservoir it will not be necessary to furnish a copy of the map where the notice describes the location sufficiently to identify it with the canal or reservoir for which the right-of-way application is made. If the water-right claim has been transferred a number of times it is not necessary to furnish a copy of each instrument of transfer; an abstract of title will be accepted." (Par. 8, Regulations for Rights of Way over Public Lands and Reservations, approved June 6, 1908, 36 L.D. 570, 571.)

Similar requirements existed in earlier regulations. 34 L.D. 212; 30 L.D. 325; 27 L.D. 200; and as early as February 20, 1894, 18 L.D. 168. All these regulations required the submission of evidence of the applicant's right to appropriate water under the applicable state laws. It will be observed that for a period of more than forty years these regulations and requirements have been in force and complied with by applicants for ditch rights under the statutes here involved. A policy reasonable in every respect and so long observed and followed by the Department of

the Interior is entitled to liberal construction and consideration, and it will not be lightly overthrown by the courts. United States v. Union Pac. Ry. Co., 148 U.S. 562, 572, 13 S.Ct. 724, 37 L.Ed. 560; Hawley v. Diller, 178 U.S. 476, 488, 20 S.Ct. 986, 44 L.Ed. 1157.

These regulations are intended to require on the part of the applicant for a ditch right some showing to indicate that a water right has been granted or will be granted by the state, sufficient for carrying out the proposed project.

■ The contention that the grant is one in præsenti, and therefore vests title in the applicant, irrespective of the approval by the Secretary of the Interior, cannot be sustained. So long as the exercise of the power of approval by the secretary is not unreasonable, or contrary to statutory mandates governing the allowance of rights of way for canals and reservoirs, the jurisdiction of the secretary to act under reasonable regulations respecting such grants cannot be controlled by the mandatory orders of the courts.

■ That a right of way grant in præsenti does not vest until approval of the application by the secretary has been determined by direct interpretation of the statutes under which appellant company claims its rights of way in the present case. United States v. Rickey Land & Cattle Co. et al. (C.C.) 164 F. 496, 500. A similar interpretation obtains in the case of railroad land grants. Noble v. Union River Logging R. Co., 147 U.S. 165, 13 S.Ct. 271, 37 L.Ed. 123; Minneapolis, St. Paul & S. S. M. Ry. Co. v. Doughty, 208 U.S. 251, 28 S.Ct. 291, 52 L.Ed. 474; Burke v. Southern Pacific R. Co., 234 U.S. 669, 34 S.Ct. 907, 58 L.Ed. 1527.

These decisions are not in conflict with Payne v. New Mexico, 255 U.S. 367, 41 S. Ct. 333, 65 L.Ed. 680; Wyoming v. United States, 255 U.S. 489, 41 S.Ct. 393, 65 L. Ed. 742; Payne v. Central Pacific Ry. Co., 255 U.S. 228, 41 S.Ct. 314, 65 L.Ed. 598; or Daniels v. Wagner, 237 U.S. 547, 35 S. Ct. 740, 59 L.Ed. 1102, L.R.A.1916A, 1116, Ann.Cas.1917A, 40. It was held in those cases that the Secretary of the Interior could not reject lieu land applications, and refuse to perform the purely ministerial act of granting patents, where all the requirements of the statutes and regulations had been properly complied with, because of conditions which the secretary found had arisen after the applicant had fully complied with the requirements of the statutes and regulations entitling him to the benefits of the grant. Those cases did not go to the extent of holding that the secretary under any circumstances lacked power to approve or reject applications if he found that the applications did not comply with statutory or regulatory requirements. They simply held that the secretary must take into consideration the conditions which were known to exist at the time the applicant complied with all the requirements which made possible the vesting of the grant. In those cases a situation existed entirely different from that presented in the instant case. The relief sought in those cases was the exchange of land, in which a right had become vested, for lieu land offered by statute; hence the mere acquisition of public land, where nothing is offered in exchange, was not involved.

It will be observed that while the broad policy here established constitutes a present grant of rights of way through public lands and reservations to canal or ditch companies and individuals for the construction of irrigation works, the jurisdiction conferred is dependent upon a cooperative jurisdiction to be exercised by the states. The states control the water and the distribution thereof within their respective jurisdictions, and the ditch company, to operate under the authority conferred by the general government, must first secure from the state a water right sufficient to furnish water for successfully carrying out the proposed project. The appropriator must then secure from the Secretary of the Interior an approval of its right of way for the construction of the ditch or ditches. While it is true that under the irrigation laws of the respective states a water right will not be granted until the beneficial use of the water has been established not only by ditch rights but by maps showing the land to be irrigated, it is also true that the only way in which ditch rights can be acquired is through the method provided for filing with the secretary and securing his approval. The Interior Department had already been "expressly charged with the administration and execution of all public-land laws as to which it was not specially provided otherwise. Rev.Stat. §§ 441, 453,

232

2478 [5 U.S.C.A. § 485; 43 U.S.C.A. § 2 and § 1201]." Burke v. Southern Pacific R. Co., supra, 234 U.S. 669, at page 684, 34 S.Ct. 907, 913, 58 L.Ed. 1527.

■ Reverting to the facts of this case, it will be observed that while the matter was pending before the Secretary of the Interior for approval, action was suspended thereon at the request of plaintiff company, to await the result of litigation in California. In that litigation was involved the issue whether or not plaintiff company had any rights whatever in the waters proposed to be appropriated. In the face of the decree of the Supreme Court of that state holding that it has no such rights, plaintiff company is now contending that the secretary should proceed to approve its application for ditch rights. If approved, the company would simply have a right for the construction of a blind ditch with no water to convey through it. The proposed source of supply is closed to it. Undoubtedly, if another source of supply should become available, a revised application could be made, and upon compliance with the requirements of the secretary it would be entitled to approval, but in the present state of this case under the statute and the reasonable regulations of the secretary, no possible right exists upon which a writ can be based.

■ The writ of mandamus is not a legal right, but an extraordinary remedy. Courts will not issue the writ to do a useless thing, even though technically to uphold a legal right. As the court said in Duncan Townsite Co. v. Lane, 245 U.S. 308, 311, 38 S.Ct. 99, 101, 62 L.Ed. 309: "Mandamus is an extraordinary remedial process which is awarded, not as a matter of right, but in the exercise of a sound judicial discretion. It issues to remedy a wrong, not to promote one; to compel the performance of a duty which ought to be performed, not to direct an act which will work a public or private mischief or will be within the strict letter of the law but in disregard of its spirit. Although classed as a legal remedy, its issuance is largely controlled by equitable principles."

The appellant having at the present time no right to water for use in the ditch and reservoir system in question, it would be vain presently to issue the writ. It is within our discretion not to order the doing of a useless act.

The decree is affirmed.